IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED    ENTERED
LOGGED    RECEIVED

JAN 1 5 2016

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND    DEPUTY

BY

JAMES A. HENSON, JR.                    *

Plaintiff                               *

v                                       *        Civil Action No. RDB-14-3676

NICHOLAS SOLTAS,  et al.,               *

Defendants                              *
                                     ***

## MEMORANDUM OPINION

Pending is a Motion to Dismiss, or in the alternative, Motion for Summary Judgment

filed by Defendants Lt. Bradley Wilt, Lt. Thomas Sires, Sgt. Walter Iser, Sgt. Brian Iames, Sgt.

Janet Puffenbarger, CO II Nicholas Soltas, CO II Cody Gilpin, CO II Steven Miller, CO II

Phillip Deist, CO II David Beachy, CO II Dustin Gursky, and CO II Jason Frantz.[1]  ECF No. 26.

Plaintiff has responded. ECF 28, 30, & 31.[2]  Upon review of the papers filed, the Court finds a

---

[1]       Defendants M. Smith, Janette Clark, and Jeremiah McCall have not been served with the complaint. For
the reasons that follow even if properly served, they would be entitled to dismissal.

        On December 7, 2015, upon Motion of Defendants, this instant case and Civil Action No. RDB-15-1824
were consolidated.  ECF 32.  Plaintiff named Jeremiah McCall as an additional Defendant in Civil Action No.
RDB-15-1824 and the Clerk amended the docket accordingly.  McCall, Plaintiff's former cellmate, has not been
served with the Complaint. Even if served,  he would be entitled to dismissal. In order to successfully assert a claim
of constitutional rights violation, the defendant must be a state actor.  Specifically, the persons charged with the civil
rights violation must be a state official; someone who has acted with a state official; someone who has obtained
significant aid from a state official; or someone whose conduct is somehow attributable to the state.  In limited
circumstances, however, seemingly private conduct can be the subject of a §1983 suit.  "[W]e have recognized four
exclusive circumstances under which a private party can be deemed to be a state actor:  (1) when the state has
coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has
sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a
traditionally  and  exclusively  public  function  to  a  private  actor;  or  (4)  when  the  state  has  committed  an
unconstitutional act in the course of enforcing a right of a private citizen." *DeBauche v. Trani*, 191 F. 3d 499, 507
(4th Cir. 1999) *cert. denied* 529 U.S. 1033 (2000).  None of the acts or conduct alleged by Plaintiff in his complaint
fall within these four categories of conduct. "If the conduct does not fall into one of these four categories, then the
private conduct is not an action of the state." *Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214, 217
(4th Cir.1993).  McCall, a Maryland state inmate, is not a state official.  Although Plaintiff alleges that McCall
conspired with correctional staff to assault him, as discussed below there is simply no evidence to support Plaintiff's
bald allegation of such a conspiracy.  As such, Plaintiff's complaint against McCall shall be dismissed.

[2]       Plaintiff's Complaint and Response are difficult to decipher.  To the extent Plaintiff raises any new issues
in his response; those issues are not properly before the Court and will not be considered.

hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motion will be construed as a Motion for Summary Judgment and will be GRANTED.

## Background

The case was instituted upon receipt of a civil rights Complaint filed by Plaintiff James Henson, an inmate currently confined at the North Branch Correctional Institution ("NBCI"). ECF 1. Plaintiff alleges that Defendants have violated his constitutional rights by subjecting him to excessive force, failing to protect him from harm, and failing to provide medical treatment. He claims that Defendants have conspired to have him murdered and have placed his life in danger by housing him with dangerous inmates. In general, as in numerous other Complaints filed by Plaintiff, he claims that Defendants continually place him in harm's way. *Id.*[3]

---

Also pending is Plaintiff's Motion for Default Judgment (ECF 19) wherein, among other things, he erroneously alleging that Defendants did not timely respond to his Complaint. The Motion will be denied.

Defendants' Motion for Extension of Time to Respond to the Complaint (ECF 24) shall be granted nunc pro tunc.

[3] Plaintiff previously filed suit regarding an assault as well as allegations concerning Correctional Officers Wilson, Merling, Lark and Weber assigning him to a cell with Inmate Jenkins, an alleged "professed racist." *See Henson v. Likin,* Civil Action No. RWT-11-2719 (D. Md.). Defendants were granted summary judgment in that case.

Plaintiff previously filed suit against CO II Jesse Lambert, CO II Nicholas Soltas, CO II Steven Miller, CO II Randolph Bennett, CO II Christopher Ortt, CO II Joshua Tart, and CO II Shawn Murray, alleging they assigned him to cells with gang members and advised gang members on the unit that Plaintiff was a rapist. He reiterated his claim regarding the assault by Jenkins and sought protective custody and a federal investigation. *See Henson v. Lambert,* Civil Action No. RWT-12-3271. Defendants were granted summary judgment in that case.

Plaintiff's previously filed suit against Lt. Dale Smith, Case Worker Gainer, Caseworker Sindy, Lt. Miller, Sgt. Iser, Sgt. Guilliam, Sgt. Tyndale, again alleging overall failure to protect and lack of a policy to address risks to Plaintiff's health and safety and an overarching conspiracy, was likewise dismissed. *See Henson v. Smith,* Civil Action No. RWT-13-2266 (D. Md.).

Plaintiff previously sued Warden Frank B. Bishop, Jr., Lt. William E. Miller, Major Robert M. Friend, Lt. Bradley Wilt, Sergeant Walter Iser, CO II Jesse L. Lambert, CO II Christopher Anderson, CO II Nicolas Soltas, and CO II Steven Miller alleging that he was the target of a campaign of murder carried out by correctional staff and specifying an assault on June 20, 2014. *See Henson v. Bishop,* Civil Action No. RDB-14-2131 (D. Md.). Defendants were granted summary judgment in that case.

Plaintiff generally alleges falsification of incident reports and medical documents, ECF 1, p. 5. Plaintiff claims that the foregoing conspiracy has been ongoing since 2005. *Id.*, p. 3.[4]

Plaintiff specifies that on November 4, 2014, a gang member was placed in his cell. ECF 1, p. 4. Plaintiff alleges that Beachy, Soltas, and James used racial epithets and threatened him with bodily harm when advising Plaintiff that he was getting a new cell mate. *Id.* Additionally, he states that when he asked to speak to a supervisor, James sprayed pepper spray through Plaintiff's door slot. He also claims that he was assaulted by Soltas and Franz, who twisted his arms in an effort to break his wrists, arms and shoulders, while cuffing Plaintiff who was then placed in a contingency cells screaming in pain. *Id.* Plaintiff also alleges that Soltas and Franz "willfully" rubbed his wrists across "the edges of the sharpened steel plate slicing the skin on [his] wrists and arms" while Sires looked on and took no action. *Id.* Plaintiff states that Nurse Clark would not clean or bandage Plaintiff's wounds. *Id.*

On September 29, 2014, Plaintiff states that a violent inmate, Juan Alston, was placed in his cell by James, Miller, Gilpen and Soltas. Plaintiff states that placing Alston in his cell created a life-threatening situation. *Id.*, p. 4.

---

Other complaints raising bald conspiracy claims were dismissed *sua sponte* by the Court. *See Henson v. Wilt, et al.*, Civil Action No. RDB-14-3724 (D. Md.); *Henson v. Friend et al.*, Civil Action No. RDB-14-3825 (D. Md.), and *Henson v. Miller et al.*, Civil Action No. RDB-15-28 (D. Md.).

Where there has been a final judgment on the merits in a prior suit; an identity of the cause of action in both the earlier and the later suit; and an identity of parties or their privies in the two suits, *res judicata* is established. *See Pension Ben. Guar. Corp. v. Beverley*, 404 F. 3d 243, 248 (4th Cir. 2005). The doctrine of *res judicata* precludes the assertion of a claim after a judgment on the merits in a prior suit by the same parties on the same cause of action. *See Meekins v. United Transp. Union*, 946 F. 2d 1054, 1057 (4th Cir. 1991). In addition, "'[n]ot only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id.*, quoting *Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc.*, 892 F. 2d 355, 359 (4th Cir. 1989).

[4] Citations are to the Court's electronic docket.

3

Plaintiff states that on July 28, 2014, he was maced and forced into a cell with another violent gang member. *Id.*, p. 5. Plaintiff states that he was attacked by his cell mate, Jeremy McCall. Plaintiff states that McCall knocked him unconscious, tied him by his ankles and wrists and continued to beat and stomp on his head while Soltas, Miller, Iser and Wilt stood outside the cell door watching and encouraging McCall to attack him. *Id.* Plaintiff alleges that the attack was encouraged due to his having filed grievances against staff. He further alleges that Iser lied to medical staff by claiming that Plaintiff fell off his bunk. *Id.*

Plaintiff has provided a copy of his nurse sick call sip of July 28, 2014, where it was noted that Plaintiff complained of injuries to his face, jaw, and teeth, left shoulder, and neck. The nurse observed facial swelling, a laceration on Plaintiff's lower lip, and bruising on Plaintiff's forehead. Plaintiff walked back to his contingency cell without difficulty. ECF 20, p. 2. Plaintiff was seen the same day by Dr. Ava Joubert who noted Plaintiff's contusions, ecchymosis, and deformity of the head and face as a result of an attack by his cellmate. ECF 31, p. 2. Joubert also noted swelling of the wrists, a laceration to the lip, and that Plaintiff's teeth did not appear to be loose. *Id.*

Plaintiff has provided an affidavit from inmate John Wagner averring that Plaintiff was assaulted by correctional staff on an unspecified date. Wagner further avers that he has personal knowledge of correctional staff arranging to have unspecified inmates assault each other. ECF 16.

Plaintiff has also provided an affidavit from inmate Maurice Stewart who avers that on an unspecified date he observed correctional staff go into a cell and speak with an inmate referred to as "Go hard." Shortly thereafter Plaintiff was placed in the cell with Go hard. Stewart opines

4

that correctional staff instructed Go hard to assault Plaintiff. Thereafter Go hard did assault Plaintiff and tied him up. Stewart avers that Officer Miller came to the cell door, observed Henson on the floor restrained, and left him there. ECF 22.

Plaintiff avers that from 2005-2015, Defendants have "skillfully planned murders," ECF 25, p. 1. He states that he has been deemed unfavorable by staff. *Id.* Plaintiff specifies that from 2005-2015, Defendants have deliberately housed him with violent gang members,told each cellmate that Plaintiff is a sex offender or child rapist, and provided them with weapons to use to attack Plaintiff. ECF 28, p. 2. As in previous matters, Plaintiff alleges Defendants have falsified incident and medical reports. *Id.*, p. 5.

Plaintiff seeks protective custody, an interstate corrections compact transfer, and a trial. He also seeks "monetary compensation." ECF 1, p. 5.

As to Plaintiff's specific allegations of assaultive conduct, Defendants offer the following:[5]

**A.    July 24, 2014 incident**

Defendants indicate that on July 24, 2014, at approximately 10:20 a.m., Franz and Gursky placed inmate Desmond Bright into Plaintiff's cell. ECF 26-4, p. 3, 6-10. Both inmates were handcuffed while Bright was placed in the cell and issued his allowable property. *Id.* After the cell door was closed, Soltas removed Plaintiff's handcuffs. *Id.* Before Bright's handcuffs

---

[5]    Plaintiff's claims of a far reaching conspiracy have been investigated and found unsubstantiated, resulting in the dismissal of the claims both administratively and judicially. *See e.g. Henson v. Likin* Civil Action No. RWT-11-2719 (D. Md.); *Henson v. Miller*, Civil Action No. RWT-12-763 (D. Md.); *Henson v. Lambert*, Civil Action No. RWT-12-3271 (D. Md.); *Henson v. Smith, et al.,* Civil Action No. RWT-13-2266 (D.Md.); *Henson v. Bishop*, RDB-14-2131 (D. Md.) (dismissing for failure to exhaust administrative remedies but noting affidavits of all correctional staff that they had not: submitted false incident reports, encouraged the submission of falsified medical reports, or instructed anyone to house Plaintiff with violent, dangerous gang members.) Those claims will not be addressed again.

5

could be removed, Plaintiff began striking Bright in the head and face with his fists. *Id.* Plaintiff ignored repeated orders from the officers to cease the assault on Bright. Franz sprayed pepper spray into the cell, hitting Plaintiff in the face and upper torso. Plaintiff then stopped the assault and consented to be handcuffed. *Id.*, pp. 3, 6-10.

Plaintiff and Bright were taken to the medical department and received decontamination showers. ECF 26-4, pp. 3, 6-10, 16-17. The inmates refused to provide written statements concerning the incident. *Id.*, pp. 14-15.

Wilt was assigned to investigate the use of force. ECF 26-4, p. 1. He concluded that the level of force used was appropriate and consistent with Department of Public Safety and Correctional Services' Use of Force Manual. *Id.*, p. 3.

As a result of the incident, Plaintiff was served with a Notice of Inmate Rule Infraction, charging him with assault or battery of another inmate and disobeying an order. ECF 26-4, pp. 11-12;ECF 26-7, p. 1. Plaintiff waived his appearance at the adjustment hearing. ECF 26-7, pp. 6 & 11. He was found guilty of the rule violations and sentenced to 180 days of disciplinary segregation for the assault on another inmate. He also received a 45 day concurrent sentence for disobeying an order and 45 days of concurrent cell restriction. No good conduct credits were revoked. *Id.*, pp. 5, 8, & 12.

**B. July 28, 2014 incident**

On July 28, 2014, at approximately 1:00 p.m., Plaintiff reported to Soltas that he had fallen off his bunk and was injured. ECF 26-9; ECF 26-10, p. 1-2. Plaintiff was evaluated by Registered Nurse Krista Swann.[6] Plaintiff reported to Swann that he had been assaulted by his

---

[6] Dr. Joubert ordered Plaintiff sent to the emergency room to rule out facial fractures. ECF 26-10, p. 1. After he was examined at the emergency room, Plaitniff was returned to WCI Infirmary. No fractures were found. Plaintiff

cellmate Jerimiah McCall. ECF 26-10, p. 1. As a result of Plaintiff's allegation of assault, Wilt investigated the matter. Photographs were taken of both inmates and Plaintiff was assigned to another cell pending the outcome of the investigation. *Id.*

Inmate McCall declined to provide a written statement but stated orally that Plaintiff had fallen from the top bunk and struck his head and face on the toilet and floor. *Id.*, pp. 1-2. McCall did not have injuries that were consistent with his assaulting Plaintiff. *Id.*, p. 1. Wilt noted that Plaintiff's injuries were consistent with either a fall or being battered, and noted that Plaintiff had assaulted his former cellmate on July 24, 2014. *Id.* Plaintiff was advised that he could pursue the matter by contacting the internal investigation unit ("IIU"). *Id.*

IIU was notified of the incident. ECF 26-10, pp. 1, 3; ECF 26-11. The IIU investigation of the incident determined that Plaintiff suffered injuries to his face and ribs. Initially Plaintiff attributed his injuries to an assault upon him by his cellmate McCall. Later, he alleged that staff paid McCall to assault him. *Id.*, p 18. It was unclear to investigators whether Plaintiff was assaulted by McCall or whether Plaintiff's injuries were sustained in the use of force incident on July 24, 2014, when Plaintiff assaulted his former cellmate Bright. *Id.* Investigator Likin reviewed surveillance video and found no sign of any staff lingering at Plaintiff's cell or other suspicious behaviors, as Plaintiff alleged. Likin found no evidence that staff paid McCall[7] to assault Plaintiff and McCall denied being paid by staff to assault Plaintiff. Likin was unable to determine whether Plaintiff was assaulted on July 28, 2014. As a result of the investigation no criminal charges were filed and the IIU case was closed. *Id.*

---

remained in the infirmary from July 28-31, 2014. He received further follow up care after his discharge, including evaluation in the Ophthalmology Department. ECF 26-10, p. 1; ECF 26-6, pp. 57-92, 98-106.

[7]     McCall is not a verified member of a security threat group. ECF 26-11, p. 34. Plaintiff and McCall were not listed on each other's enemy alert screen prior to the incident. ECF 26-11, pp. 30 ,37.

**C. September 29, 2014**

On September 29, 2014, Sgt. Green was assigned to Plaintiff's housing unit as the officer in charge. ECF 26-12, p. 3. Green was advised by another officer that Plaintiff was holding his security slot open and asking to speak with a sergeant. When Green approached the cell, Plaintiff advised him that his cellmate, Juan Alston, had assaulted him. *Id.* Green ordered both inmates to the cell door to be handcuffed. Both Henson and Alston had visible marks on them, indicating an altercation had occurred. *Id.* Both inmates were photographed and treated by medical staff. *Id.*

As a result of this incident Plaintiff was charged with assaulting or battering another inmate and misuse or tampering with security equipment. An adjustment hearing was held. Plaintiff was found guilty of the assault charge and received 180 days of disciplinary segregation consecutive to any current sentence he was serving. No good conduct credits were revoked. *Id.*, p. 10.

**D. November 4, 2014 incident**

On November 4, 2014, Plaintiff refused to be restrained in order to exit his cell and have a cell partner placed in the cell. ECF 26-13, pp. 3, 6, 8-13, 17-20. An extraction team was formed including Sires, Iames, Franz, Anderson, Soltas and Gilpin. Beachy operated the camera. Several attempts were made to gain Plaintiff's compliance to be handcuffed. Plaintiff refused to comply with the officers' requests and attempted to block the security slot. *Id.* Pepper spray was deployed into the cell which resulted in Plaintiff complying with directives regarding restraints. Plaintiff placed his hands through the slot to be restrained. He was escorted to the medical department for evaluation of pepper spray exposure. *Id.*, pp. 3, 6, 8-13, 19-20; *see also* ECF 26-

6, pp. 118-120.   Subsequently, Plaintiff was strip searched. ECF 26-13, p. 3, 6, 8-13, 17-20. Plaintiff was offered a decontamination shower but refused.   *Id.* Once placed in a contingency cell, Plaintiff resisted having his hand restraints removed.   Frantz, Gilpin and Soltas ultimately succeeded in removing Plaintiff's hand restraints and closed the cell door slot. *Id.*   Lt. Jack Johnson was assigned to investigate the use of force. He found that the force used was proportionate and consistent with DPSCS polices and manuals. *Id.*, p. 3.

Plaintiff was served with a notice of inmate rule infractions as a result of this incident. ECF 26-24. He was charged and found guilty of engaging in a disruptive act, interfering or resisting the performance of staff duties, and disobeying an order.[8] *Id.*, p. 2.

On November 16, 2014, Plaintiff filed Administrative Remedy Procedure ("ARP") NBCI #3055-14 alleging excessive force was used against him by staff on November 4, 2014, after they attempted to place a gang member in his cell. ECF 26-27.  Plaintiff's ARP was dismissed by the Warden and on appeal. ECF 26-27; ECF 26-28, p. 6.  Plaintiff appealed the dismissal of his ARP to the Inmate Grievance Office ("IGO"), complaining that he was pepper sprayed and assaulted by staff on November 4, 2014. ECF 26-27. The grievance as dismissed on March 4, 2015, based upon a finding that Plaintiff was precluded from challenging through the grievance process the circumstances already adjudicated in a disciplinary hearing.  *Id.*

E.   **Medical Claim**

Plaintiff's medical records show that he was seen by Nurse Practitioner Janette Clarke on August 22, 2014, to discuss test results. At that time, Plaintiff expressed concern for his safety which Clarke reported to custody staff. ECF 26-6, pp. 93-97.  Additionally, Clarke referred

---

[8] He was found not guilty of being disruptive or inciting. *Id.*, p. 27.

Plaintiff for an evaluation with mental health staff to determine whether Plaintiff's stated concerns were actual or perceived. *Id.*

On September 9, 2014, during a medical appointment, Plaintiff advised Clark that his cell buddy was going to "fuck him up." *Id.*, pp. 98-99. Custody staff was present when Plaintiff made this statement. It was noted that medical was awaiting an evaluation from mental health staff regarding Plaintiff's comments were an actual or perceived thought of harm or whether Plaintiff was attempting to control his environment.[9] *Id.*

In regard to Plaintiff's physical injuries, Plaintiff received follow up medical care on September 12, 24, 29, October 8, 22, and 31, 2014. *Id.*, pp. 103-117.

### Standard of Review

**A.   Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,*

---

[9]      Plaintiff's July 29, 2014, behavioral health initial intake report indicates that since August 11, 2010, Plaintiff was scheduled to see or be interviewed by a mental health professional 10 times and on each occasion he refused. ECF 26-6, p. 58. Plaintiff again refused to be interviewed and the initial intake was conducted based upon a review of Plaintiff's records. *Id.*

478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**B.      Motion for Summary Judgment**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Analysis

### A.   Excessive Force Claims

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates

as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkens v. Gaddy*, 599 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 34.

In the context of the use of pepper spray by prison staff, "[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 440 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (emphasis omitted). The use of pepper spray is not "per se a cruel and unusual punishment." *McCargo v. Mister*, 462 F.Supp. 813, 818 (D. Md. 1978). It may be used in order to control recalcitrant inmates. *Williams*, 77 F. 3d at 763. Analysis regarding the amount of chemical agent used focuses, as with all other excessive force claims, on whether the Defendant acted with a sufficiently culpable state of mind. *Iko*, 535 at 238 (4th Cir. 2008) (citations omitted) (holding correctional officer not entitled to qualified immunity where additional chemical agent was deployed into inmate's cell after inmate attempted to comply with officer's order, did not react violently, and officer failed to remove inmate's clothes or secure medical care for inmate after chemical agent exposure).

Eighth Amendment violations have been found where an officer used more than a reasonable amount of a chemical agent. *See, e.g., Furnace v. Sullivan,* 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray

until empty, and other officer also joined in); *Lawrence v. Bowersox,* 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); *DeSpain v. Uphoff,* 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier). However, where an inmate repeatedly ignores official commands, multiple applications of pepper spray have been found reasonable. *See Williams,* 77 F.3d at 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan,* 19 F. App'x. 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell); *Norris v. Detrick,* 918 F.Supp. 977, 984 (N.D.W.Va. 1996) (upholding use of two blasts of pepper spray when inmate refused to return to his cell during lockdown). Use of chemical agents is reasonable when, as here, an officer is attempting to maintain order and discipline in the institution. *Santiago v. Walls,* 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); *Combs v. Wilkinson,* 315 F.3d 548, 558 (6th Cir. 2002) (holding use of pepper spray during prison riot appropriate).

In the July 24, 2014 incident, pepper spray was sprayed into Plaintiff's cell to stop the altercation between Plaintiff and  Bright whom Plaintiff had spontaneously attacked. ECF 26-4, p. 3, 6-10. Plaintiff does not allege, and the record does not suggest, that more than the necessary amount of pepper spray to quell the altercation was sprayed into Plaintiff's cell. Once Plaintiff stopped his assault, he came to the security slot in order to be handcuffed.  Plaintiff was escorted by Officers for medical treatment and was provided a decontamination shower. ECF 26-4, pp. 3, 6-10, 16-17.  Plaintiff was served with a notice of inmate rule violation and found guilty, based

14

upon the sworn statements of the officers, of assault or battery of another inmate and disobeying an order. ECF 26-4, pp. 11-12;ECF 26-7, p. 1.

In regard to the November 4, 2014 incident, Plaintiff refused several orders to be handcuffed and come out of his cell.  ECF 26-13, pp. 3, 6, 8-13, 17-20.  Correctional staff obtained approval for use of pepper spray to gain Plaintiff's compliance.  Plaintiff was given numerous opportunities to respond to Defendants' request that he be handcuffed before pepper spray was deployed into the cell. *Id.* Thereafter, Plaintiff immediately complied with the order to be handcuffed. He was taken to the medical department for evaluation, offered a decontamination shower, and placed in a contingency cell. *Id.*, pp. 3, 6, 8-13, 17-20; *see also* ECF 26-6, pp. 118-120.  When being placed in the contingency cell, Plaintiff pulled away from staff and resisted the removal of his handcuffs, resulting in his arms and wrists being twisted as the handcuffs were removed and the cell door secured. ECF 26-13, p. 3, 6, 8-13, 17-20.  Again Plaintiff was charged and found guilty, based upon the sworn statement of correction staff, of inmate rule violations. ECF 26-24.

It is clear that some force was necessary in both instances in order to quell the fight between Plaintiff and his cellmate and extract the inmates from the cell.  In the first instance, Plaintiff was given a direct order to stop fighting, which he refused.  In the second incident Plaintiff refused orders to be restrained and exit his cell.  Taking the facts in the light most favorable to Plaintiff, his claim nevertheless fails. Faced with Plaintiff's refusal to comply with lawful orders, pepper spray was deployed through the security slot in the door to gain Plaintiff's compliance.  Plaintiff's injuries were consonant with the use of pepper spray.  Only the amount of force necessary to protect the inmates and staff, and restore order was used.  Once the officers

saw that Plaintiff had complied with directives, they stopped the use of pepper spray. As the Fourth Circuit explained in *Williams*, "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate. Moreover, prompt washing of the maced area of the body will usually provide immediate relief from pain." *Williams*, 77 F.3d at 763 (citing *Soto*, 744 F.2d at 1262). Here the application of the pepper spray ceased as soon as Plaintiff complied with directives, he was immediately removed from his cell, and was provided a change of clothes and offered a shower. Prompt washing and medical attention have been considered a sufficient step to mitigate the use of chemical agents. *See Williams, supra*, 77 F.3d at 763.

Likewise, the application of force in placing Plaintiff in the contingency cell on November 4, 2014, was reasonable. Plaintiff had been involved in a cell extraction and when being placed in the contingency cell attempted to pull away from correctional officers and refuse orders regarding the removal of his restraints. The officers responded with the amount of force necessary to gain Plaintiff's compliance with the removal of the restraints, place Plaintiff in the contingency cell, and secure the cell door.

**B. Failure to Protect**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An inmate has an Eighth Amendment right to be protected from violence perpetrated by other prisoners. *Danser v.*

*Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014); *see Farmer v. Brennan*, 511 U.S. 825, 833-35 (1994). In *Danser*, the Fourth Circuit explained:

> This constitutional right derives from the Supreme Court's holdings that the treatment an inmate receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. [*Farmer*, 511 U.S.] at 832-33. Because being assaulted in prison is not "'part of the penalty that criminal offenders pay for their offenses against society,'" *id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), prison officials are responsible for "protect[ing] prisoners from violence at the hands of other prisoners." *Id* at 833 (citations and internal quotation marks omitted).

*Id.* at 346.

> Further, the *Danser* Court said,

> An Eighth Amendment claim of this nature requires proof of two elements to establish deprivation of a constitutional right. [*Farmer*, 511 U.S.] at 834; *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010). First, a prisoner must establish a serious deprivation of his rights in the form of a "serious or significant physical or emotional injury."[ ] *Brown*, 612 F.3d at 723; *see also De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013). . . . The second element ... requires that a plaintiff show that the prison official allegedly violating the plaintiff's constitutional rights had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citation and internal quotation marks omitted). In this context, the required state of mind that must be established is a "deliberate indifference to inmate health or safety." *Id.* (citations omitted).

*Id.* at 346-347.

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer* 511 U.S. at 833-

34 (citations omitted). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339-40 (4th Cir. 1997)

Here, it is undisputed that Plaintiff's injuries arising from the July 28, 2014 assault upon him by inmate McCall qualify as "significant" under the first element of the *Farmer* test. The Court will assume, arguendo, that Plaintiff's injuries arising from the September 29, 2014 assault upon him by Green likewise qualify as "significant" under the first element of *Farmer*. It is the second element which forms the core question and requires Plaintiff to show that Defendants had a "sufficiently culpable state of mind." Evidence concerning "constructive notice" of a risk of harm is generally insufficient to establish deliberate indifference. *Farmer* at 840-43.

There is simply no indication that Defendants had advanced word from Plaintiff or anyone else that Plaintiff was in particular danger of assault by Green, McCall, or any other inmate. While Plaintiff has claimed repeatedly that he is at a risk of harm from gang members, his claims have been unsubstantiated. Moreover, the inmates who attacked Plaintiff are not verified members of security threat groups. Defendants deny a conspiracy to harm Plaintiff. Plaintiff's medical and mental health records demonstrate a belief among staff that Plaintiff has attempted to manipulate housing. The uncontradicted evidence before the Court demonstrates that Plaintiff suffered a spontaneous violent attack at the hands of Green and McCall. Officers responded quickly and reasonably to the attacks by providing medical care, investigating Plaintiff's claims, and moving Plaintiff to administrative segregation. There is no indication that the named Defendants were aware of a significant risk of harm to Plaintiff by being housed with McCall or Green. Further, even if Defendants were ware that Plaintiff had expressed concern

18

over his housing status, there is no indication that any of the named Defendants subjectively believed that housing Plaintiff with McCall or Green created a risk of harm.[10]   Stated simply, there is no evidence that officers were deliberately indifferent to a significant risk of harm.

### C.     Medical Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991).   In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).   Proof of an objectively serious medical condition, however, does not end the inquiry.   The subjective component requires "subjective recklessness" in the

---

[10]     Inmate Stewart's affidavit is of little help to Plaintiff.  Assuming  "Go hard" refers to inmate McCall, Stewart avers that he saw correctional staff talking to Go hard who later attacked Plaintiff. Stewart offers his opinion that staff conspired with Go hard regarding the assault. This claim was investigated by IIU and found not credible. McCall denied it and there was no evidence that a conspiracy had been entered into. Moreover, tier tapes were reviewed and there was no unusual activity of correctional staff by Plaintiff's cell as Stewart indicated.

face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown* 240 F. 3d at 390; citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id.* at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge). Mere disagreement with a prescribed course of treatment is insufficient to establish an Eighth Amendment claim of deliberate indifference. *See Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

The record evidence demonstrates that Plaintiff was assessed immediately following each specific incident complained of. Plaintiff was either provided or offered a decontamination

shower as to two incidents involving pepper spray exposure. He was provided extensive treatment after the July 28, 2014 incident, including referral to an outside hospital, a stay in the prison infirmary, x-rays, referral to a specialist, analgesic medication, and follow up care. He was also provided treatment and follow up care after the September 29, 2014 assault. ECF No. 26-6. The records also reflect that Plaintiff was referred for mental health care but was uncooperative. *Id.*

Mere disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. Plaintiff has failed to submit any evidence to support his claim that he was denied constitutionally adequate medical care. Medical providers made sincere efforts to address his medical needs and provide appropriate treatment.

### Injunctive Relief

Lastly, Plaintiff is not entitled to any of the injunctive relief he requests. As a preliminary injunction temporarily affords an extraordinary remedy prior to trial than the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-23 (2008); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292-93 (4th Cir. 2011). Plaintiff's requests for injunctive relief shall be denied, as he does not clearly

establish that he would suffer immediate and irreparable injury, loss, or damage, if the relief requested is not provided.

Substantial deference is to be given to the judgment of prison administrators. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). This deference is at its greatest when prison order is at stake. *See In Re Long Term Administrative Segregation of Inmates Designated as Five Percenters,* 174 F.3d 464, 469 (2003). Plaintiff has failed to produce evidence that he is likely to suffer irreparable harm if this Court does not order protective custody. Moreover, it is not the province of this Court to determine how a particular prison might be more beneficently operated: the expertise of prison officials must be given its due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995). Plaintiff is, therefore, not entitled to injunctive relief and his requests for same shall be denied.

## Conclusion

For the aforementioned reasons, Defendants Lt. Bradley Wilt, Lt. Thomas Sires, Sgt. Walter Iser, Sgt. Brian Iames, Sgt. Janet Puffenbarger, CO II Nicholas Soltas, CO II Cody Gilpin, CO II Steven Miller, CO II Phillip Deist, CO II David Beachy, CO II Dustin Gursky, and CO II Jason Frantz's Motion, construed as a motion for summary judgment, shall be GRANTED. Plaintiff's Complaint against M. Smith, Janette Clark, and Jeremiah Mccall shall be dismissed. A separate Order follows.

JANUARY 15, 2016
_____
Date

_____
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

22